UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| David Allen,<br><br>    Plaintiff,<br><br>        v.<br><br>James Baker, Nicholas Deml,<br>Mitchell Miller, Max Titus, Vital Core,<br>Vermont DOC,<br><br>    Defendants. | Civil Action No. 5:21–cv–280-gwc-kjd |

**OPINION AND ORDER**
(Doc. 17)

Plaintiff David Allen, a prisoner proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants the Vermont Department of Corrections (DOC); James Baker, the former Commissioner of the DOC; Nicholas Deml, the current Commissioner of the DOC; prison physician Dr. Mitchell Miller; DOC Assistant Director of Health Services Max Titus; Vital Core, health services contractor for the DOC. (Doc. 1.) Plaintiff alleges that Defendants have failed to properly manage his Type 1 diabetes since he entered the Southern State Correctional Facility in July 2020. (*See* Docs. 1, 3-1.) As a result, Plaintiff alleges that his blood-sugar levels have been dangerously high, causing him to experience blackouts and seizures on multiple occasions between June 2021 and January 2022. (*Id.*) Plaintiff claims he needs constant glucose checks and insulin, and asks that the Court require prison authorities to provide him with the "Freestyle Libre device" for continuous blood glucose monitoring and an "Omnipod insulin pump," or similar devices. (Doc. 1 at 6). Plaintiff seeks his immediate release from prison, over $15 million for his pain and suffering, and punitive damages against all

Defendants "to ensure no other diabetics are harmed while in custody." (Doc. 1 at 6; *see* Doc. 3-1 at 14.)

Pending before the Court is the Motion to Dismiss filed by Defendants Baker, Deml, and Titus (collectively "Defendants") pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 17.) Plaintiff has filed an Opposition to the Motion (Doc. 18), as well as an additional document titled "Objection to Defendants['] Motion" (Doc. 22). As explained below, given the unclear state of the record with respect to the operative Complaint in this case, and that Defendants' Motion to Dismiss does not address the facts and legal claims pleaded in *both* the original Complaint (Doc. 1) and Plaintiff's supplemental filing (Doc. 3-1), the Court grants Plaintiff leave to file an amended complaint incorporating all facts and claims in one document; and denies Defendants' Motion to Dismiss as moot, given the anticipated filing of an amended complaint.

## Procedural History

On December 3, 2021, Plaintiff filed the original Complaint in this case, alleging six causes of action pursuant to 28 V.S.A. § 801 and the Americans with Disabilities Act (ADA), among other claims. (Doc. 1 at 7, 11.) On January 12, 2022, Plaintiff filed a letter addressed to Clerk of Court Jeffrey Eaton that states in relevant part: "I . . . have some new information which I need added to my file. I have included more for the complaint . . . . These pages are *in addition to*, not in place of, my original filing."[1] (Doc. 3 at 1 (emphasis added).) Plaintiff attached to the letter a fourteen-page document titled "Amended Complaint," which begins: "The following are facts *in addition to* the original file." (Doc. 3-1 at 1 (emphasis added).) The document includes six new causes of action (*id.* at 12–13) and many new factual allegations,

---

[1] Plaintiff is advised that all future papers filed with the Court, other than pleadings, must be in the form of a motion, an opposition, or a reply, rather than a letter or similar informal filing. *See* Local Rule 7; Fed. R. Civ. P. 7(b).

most describing events that occurred after the original Complaint was filed (*see id.* at 3–9 (describing events occurring on various dates between December 7, 2021 and January 5, 2022)). The document also contains a section titled "Amended Prayer for Relief," which seeks several remedies in addition to those pleaded in the original Complaint. Specifically, Plaintiff requests his immediate release into the community, payment for "top medical and dental insurance for the rest of [his] life," an award of $14,700,000 over the $300,000 requested in the original Complaint, and an order requiring that "[e]veryone employed by [the Vermont] DOC must undergo extensive training on the topic of Type 1, insulin[-]dependent[] juvenile diabetes" and that "[a]ll inmates with Type 1 diabetes must receive an individual treatment plan." (*Id.* at 14.) Although the January 2022 filing does not reference Defendants Baker, Deml, or Titus, the filing does not include a caption page listing Defendants or otherwise indicate an intention to remove these Defendants from the Complaint.

On June 15, 2022, Defendants filed a Motion to Dismiss the case under Fed. R. Civ. P. 12(b)(6). (Doc. 17.) In their Motion to Dismiss, Defendants refer to Plaintiff's January 12, 2022 filing as an "Amended Complaint." (*Id.* at 1 (referring to "ECF 3," which includes Docs. 3 and 3-1 on the electronic docket, as the "Amended Complaint").) Plaintiff refers to the January 2022 filing as both an "Amended Complaint" and a "Supplemental Complaint." (Doc. 3-1 at 1; Doc. 18 at 3; Doc. 22 at 1–2.)

## Analysis

I.   **Applicable Law**

Under Federal Rule of Civil Procedure 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be

3

supplemented."  A supplemental pleading "stands with the original pleading and is a mere addition to, or continuation of, the original complaint or answer"; "[i]t is designed to obtain relief along the same lines, pertaining to the same cause, and based on the same subject matter or claim for relief, as set out in the original complaint."  *United States v. Russell*, 241 F. 2d 879, 882 (1st Cir. 1957); *see Slavenburg Corp. v. Boston Ins. Co.*, 30 F.R.D. 123, 126 (S.D.N.Y. 1962) (noting that a supplemental pleading is "designed to cover matters subsequently occurring but pertaining to the original claim" (internal quotation marks omitted)).  Supplemental relief may even include "the addition of new defendants and new claims, if adequately related to the originally stated claims."  *Lubavitch of Old Westbury, Inc. v. Bd. of Trustees of Vill. of Old Westbury, New York*, No. CV 08-5081 (DRH)(ARL), 2021 WL 4756093, at *7 (E.D.N.Y. July 7, 2021) (internal quotation marks omitted), *report and recommendation adopted in part, rejected in part sub nom. Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, 2021 WL 4472852 (Sept. 30, 2021).

An amended pleading, however, "is designed to include matters occurring *before* the filing of the [original claim], but either overlooked or not known at the time."  *Slavenburg Corp.*, 30 F.R.D. at 126 (emphasis added) (internal quotation marks omitted).  Moreover, "*[a]mending* a pleading involves *entirely replacing the earlier pleading* with a new pleading containing matters that occurred *prior* to the filing of the original pleading, while *supplementing* a pleading involves *merely adding* to the original pleading events occurring *subsequent* to the earlier pleading."  *Francis ex rel. Est. of Francis v. Northumberland Cnty.*, 636 F. Supp. 2d 368, 383 n.26 (M.D. Pa. 2009); *see Fraser v. Franco*, Civil No. 3:22CV01014(SALM), 2022 WL 4367576, at *8 (D. Conn. Sept. 21, 2022) ("An [a]mended [c]omplaint, if filed, will completely replace the

4

[c]omplaint, and the [c]ourt will not consider any allegations made in the original [c]omplaint in evaluating any [a]mended [c]omplaint.").

Both leave to supplement and leave to amend "should freely be granted absent the finding of undue delay, bad faith, dilatory tactics, undue prejudice in being served with the supplemental pleading, or futility." *Purcelle v. Thomas*, No. 9:18-CV-0077 (GLS/TWD), 2019 WL 1762628, at \*2 (N.D.N.Y. Apr. 22, 2019).  Regarding supplementary pleadings in particular, "Rule 15(d) reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties." *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008) (internal quotation marks omitted); *see Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 227 (1964) (stating that the "basic aim" of Rule 15(d)'s allowance of supplemental pleadings is "to make pleadings a means to achieve an orderly and fair administration of justice").  Thus, leave to file supplemental pleadings "should be freely permitted when the supplemental facts connect [the new pleading] to the original pleading"; and "[l]eave is normally granted, especially when the opposing party is not prejudiced by the supplemental pleading." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

**II.     Plaintiff's January 2022 Filing**

Although the January 2022 filing is captioned as an "Amended Complaint," the Court deems it to be a supplemental pleading within the meaning of Rule 15(d).  *See Russell*, 241 F.2d at 882 (holding that erroneous characterization of corrected pleading as an "amended complaint" rather than a supplemental pleading was immaterial).  First, most of the new facts contained in the January filing occurred *after* the date Plaintiff filed the original Complaint.  Second, the January filing does not incorporate all the allegations, claims, and parties included in the original Complaint, but rather merely adds to the Complaint.  Perhaps most indicative of Plaintiff's intent

5

to file a supplemental pleading, the January 2022 filing begins with the "Seventh Cause of Action" (Doc. 3-1 at 12). The original Complaint concluded with the "Sixth Cause of Action" (Doc. 1 at 11). Third, the January filing raises the same general subject matter and legal principles as the original Complaint. Fourth, the January filing itself states that the new content is "in addition to, not in place of," the original Complaint. (Doc. 3 at 1; *see* Doc. 3-1 at 1, 14.) Finally, Plaintiff states in his Opposition to the Motion to Dismiss and in his "Objection" to the Motion that his January filing was intended as a "Supplemental Complaint" rather than an "Amended Complaint," explaining that he "ma[de] a mistake in his wording" of the January filing as an "'Amended Complaint'" and should have captioned it a "'Supplemental Complaint' since it refers to events that occurred since [the] filing [of] the original [C]omplaint." (Doc. 18 at 3; *see* Doc. 22 at 1–2.) Further, Plaintiff states in his Opposition that the Complaint in this case "include[s] the three[-]plus pages originally filed [in the original Complaint] as well as the pages added in January of 2022."[2] (Doc. 18 at 3.)

For these reasons, the Court concludes that Plaintiff did not intend his January 2022 filing to take the place of his original Complaint. The filing is more appropriately characterized as a supplemental complaint. Therefore, all facts and claims in both the original Complaint and the January 2022 supplemental filing are part of Plaintiff's case.[3]

---

[2] Defendants have not addressed these statements of Plaintiff in their Reply. Defendants' filings also do not address the claims pleaded in the original Complaint. (*See* Docs. 17, 21.)

[3] The filing of a supplemental complaint under Rule 15(d) requires leave of court. *See Vance v. Venettozzi*, No. 9:18-CV-0748 (BKS/ATB), 2019 WL 4415551, at *3–4 (N.D.N.Y. Sept. 16, 2019) (citing *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002)). Leave to supplement should be freely granted absent undue prejudice. *See Quaratino*, 71 F.3d at 66. Plaintiff's supplemental filing was made on January 12, 2022, within approximately five weeks of the filing of the original Complaint on December 3, 2021, and before any Defendant filed a response. As it appears that the Supplemental Complaint did not prejudice Defendants, and it is more efficient for the Court to consider all facts and claims in the same proceeding, the Court permits the filing of the Supplemental Complaint.

### III. Defendants' Motion to Dismiss

Defendants' Motion to Dismiss addresses only the January 2022 supplemental filing. (*See* Doc. 17.) The Motion does not address the original Complaint, which pleads the six causes of action that the January 2022 filing seeks to supplement.

A primary basis for Defendants' Motion to Dismiss is Plaintiff's alleged failure to exhaust his administrative remedies regarding the claims in the "Amended Complaint." (*See id.* at 3–5.) Defendants argue that Plaintiff received a response to a grievance on February 17, 2021, which was *before* the date of the first alleged unlawful conduct pleaded in the supplemental filing (September 5, 2021). (*Id.* at 4.) According to Defendants, "[the] response was six months before the first allegations occurred in the Plaintiff's Amended Complaint." (*Id.*) Therefore, Defendants contend Plaintiff did not exhaust administrative remedies as to the conduct alleged in the Amended Complaint. But the original Complaint claims the unlawful conduct began when Plaintiff was first incarcerated, on July 10, 2020, and describes allegedly unlawful conduct occurring on at least four other dates before September 5, 2021. (*See* Doc. 1 at 5, 7–10.) The Motion to Dismiss therefore does not address all the facts alleged in this case with respect to the exhaustion argument.

The Motion to Dismiss also appears to contain discrepancies regarding two critical facts. Specifically, Defendants' exhaustion argument hinges on the claims that "Plaintiff filed a grievance . . . and received a response on February 17, 2021" (Doc. 17 at 4), and that "Plaintiff waited until September 2, 2021 to file an appeal to the Commissioner" (*id.* at 5). But Defendants' filings suggest that Plaintiff received a "response to [his] grievance appeal" over a year earlier, on "08/07/2020," and submitted an appeal of that response on "09/02/2020." (Doc. 17-5 at 2.) The "Attestation of Laura Carter," attached as Exhibit A to the Motion to Dismiss,

7

contains similar discrepancies regarding Plaintiff's alleged failure to exhaust his administrative remedies (*see* Doc. 17-2 at 3, ¶¶ 10, 12), as noted in Plaintiff's Opposition (*see* Doc. 18 at 7–8) and "Objection" (Doc. 22 at 12).[4]  For example, Carter states: "Mr. Allen did not file a timely appeal . . . in response to the February 17, 2021 response . . . . Mr. Allen did not file an appeal . . . until September 2, 2020, which was well past the ten . . . business days to appeal . . . ." (Doc. 17-2 at 3, ¶ 12.)  This cannot be correct, as it is not possible that Allen filed an appeal of a response before the response itself was filed.  Moreover, Carter's Attestation avers that copies of Allen's relevant grievances are included as Attachments B and C (*id.* at ¶¶ 10, 12).  However, Plaintiff's grievances are not attached to the Attestation or any other documents submitted by Defendants (*see* Docs. 17-3 through 17-5).[5]  If in a renewed motion to dismiss Defendants maintain that Plaintiff failed to exhaust his administrative remedies, Defendants must provide the Court with all grievance documents relevant to the alleged failure to exhaust the claims raised in Plaintiff's Complaint, and an Attestation containing an accurate description of the administrative history of the case.

The Motion to Dismiss also does not address Plaintiff's ADA claim, noting that "Defendants do not understand that Plaintiff is asserting a claim under the ADA." (Doc. 17 at 2 n.2.)  Defendants request an opportunity to address the ADA claim if the Court determines that

---

[4] Plaintiff asserts that Carter's Attestation is "perjurious" and requests that the Court "issue[] discipline accordingly to the opposing team for this fraudulence and misconduct." (Doc. 18 at 8; *see* Doc. 22 at 12–13.)  The Court declines Plaintiff's request, but anticipates that any subsequent responsive pleading to Plaintiff's Amended Complaint will provide an accurate accounting of the administrative grievance process relevant to Plaintiff's claims.  Plaintiff also requests "preliminary injunctive relief" (Doc. 22 at 14), claiming that Defendants are "purposely delaying the case" (*id.* at 11).  As this is not a proper basis for injunctive relief, the Court declines to do so.  The Court understands that Plaintiff claims an urgent need to receive different treatment to manage his Type I diabetes, but it has no reason to conclude that Defendants are purposely delaying the case.

[5] Attachment B appears to be the DOC's response to Plaintiff's January 2021 appeal to the Corrections Executive, not Plaintiff's grievance.  Attachment C appears to be Plaintiff's September 2020 appeal to the Commissioner.

Plaintiff is raising such a claim. In the original Complaint, however, Plaintiff's "Fourth Cause of Action" alleges "Title II of the Americans with Disabilities Act." (Doc. 1 at 11.) In addition, the "Eighth Cause of Action" in the January 2022 filing recites "42 U.S.C. § 12132" (Doc. 3-1 at 12), which is Title II of the ADA. *See, e.g.*, *Bartshe v. Comm'r of Vermont Dep't of Corr.*, Civil Action No. 2:18-CV-166-cr-jmc, 2020 WL 4754971, at *2 (D. Vt. July 17, 2020) ("Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" (quoting 42 U.S.C. § 12132)), *report and recommendation adopted sub nom. Bartshe v. Baker*, 2020 WL 4748054 (Aug. 14, 2020). The "Ninth Cause of Action" in the January 2022 filing also recites "42 U.S.C. § 12131(2)" (Doc. 3-1 at 12), which defines "qualified individual with a disability" under the ADA. *See, e.g.*, *Brunette v. City of Burlington, Vermont*, Case No. 2:15-cv-00061, 2018 WL 4146598, at *32 (D. Vt. Aug. 30, 2018) ("Under the ADA, the term 'qualified individual with a disability' means: 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" (quoting 42 U.S.C. § 12131(2))).

Therefore, the Court concludes that Plaintiff is asserting an ADA claim.

**IV.    Leave to File Amended Complaint**

Given that Plaintiff's supplemental January 2022 filing includes new facts, new legal claims, and a new prayer for relief, the Court grants Plaintiff leave to file an amended complaint that incorporates all facts, claims, and defendants in one document. *See Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (noting that a *pro se* plaintiff should ordinarily be granted

the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" (internal quotation marks omitted)). "Because Plaintiff's amended complaint will completely replace, not supplement, the original [C]omplaint, any facts or claims that Plaintiff wants to include from the original [C]omplaint [and the supplemental filing of January 2022] must be repeated in the amended complaint." *Rodriguez v. Blanding*, No. 22-CV-7288 (LTS), 2022 WL 4342821, at *4 (S.D.N.Y. Sept. 19, 2022); *see Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)); *Anthony v. Fein, Such & Crane, LLC*, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, . . . the amended complaint will take the place of and effectively invalidate Plaintiff's [prior] complaint."), *report and recommendation adopted*, 2015 WL 7738048 (Dec. 1, 2015). In addition, Plaintiff's amended complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10.

Plaintiff represents to the Court that he can in fact "compose an official amended complaint to provide more specific details of how each defendant is liable for numerous violations of his Constitutional Rights." (Doc. 18 at 14.) Rather than filing an amended complaint, however, Plaintiff asks that the Court simply "reject" Defendants' Motion to Dismiss "and any future motions that prevent the case from moving forward." (Doc. 22 at 14–15.) The Federal Rules require otherwise, providing that "any required response to an amended pleading must be made . . . within 14 days after service of the amended pleading." Fed. R. Civ. P. 15(a)(3). Therefore, the Court denies Defendants' Motion to Dismiss as moot due to the

anticipated filing of an amended complaint. Upon filing and service of the amended complaint, Defendants shall respond in accordance with Rule 15.

## Conclusion

The Court grants Plaintiff leave to file an amended complaint that incorporates all facts and claims in one document and otherwise complies with the directions stated in this Order. The amended complaint shall be filed by February 10, 2023. Given that the Court is permitting Plaintiff to file an amended complaint, Defendants' Motion to Dismiss (Doc. 17) is denied as moot.

Dated at Burlington, in the District of Vermont, this 5th day of January 2023.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge