UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| David Allen,<br><br>  Plaintiff,<br><br>  v.<br><br>Vermont Department of Corrections,<br>Vital Core, James Baker, Nicholas Deml,<br>Max Titus, Stephen Riendeau,<br>Charles Pavlovic, Stephanie Kindred, et al.,<br><br>  Defendants. | Civil Action No. 5:21–cv–280 |

**REPORT AND RECOMMENDATION**
(Doc. 29)

Plaintiff David Allen, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA) for alleged violations of his civil rights regarding his medical treatment as a pretrial detainee at Southern State Correctional Facility (SSCF). Mr. Allen claims that Defendants have failed to properly manage his Type 1 diabetes since he entered SSCF, and that "he has endured denial of rights and privileges, attacks, . . . threats, harassment, . . . physical violence, loss of property, and more," resulting in daily deterioration of his physical and mental health. (Doc. 28 at 36.) Mr. Allen seeks an individually tailored diabetes treatment plan to include specific monitoring devices, weekly private consultations with the nurse of his choice, dental treatment from Clear Choice specialists, and permanent removal of several Defendants from employment with the State of Vermont or in the medical field, among other claims. In addition, Mr. Allen seeks over $34 million in monetary damages. (*Id.* at 43–44.)

This Report and Recommendation addresses the second Motion to Dismiss by former Commissioner of the Vermont Department of Corrections (DOC) James Baker, current DOC Commissioner Nicholas Deml, and DOC Director of Health Services Max Titus (collectively "Defendants").[1] (Doc. 29.) Mr. Allen brings claims against Defendants in their official and individual capacities. (Doc. 28 at 1–2.) As explained below, I recommend GRANTING the Motion to Dismiss and DISMISSING Mr. Allen's claims against Defendants Baker, Deml, and Titus with prejudice.

## Background

Mr. Allen filed the Amended Complaint on February 13, 2023. He alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to adequate medical care, among other allegations. (*See* Doc. 28 at 14–15, 37.) He claims that his diabetes care regimen was discontinued at the time of his arrest, and that SSCF staff has refused to reinstate the regimen since he came into DOC custody. Mr. Allen further alleges that various SSCF nurses and correctional officers have provided inadequate medical care to him, resulting in blackouts, seizures, shakes, confusion, weakness, sweating, difficulty breathing, gum disease, and loss of teeth, among other conditions. (*Id.* at 11.) He asserts that DOC staff and nurses have regularly abused him and intentionally moved him from cell to cell in order to place him with "problematic" inmates. (*Id.* at 16–17.) Mr. Allen claims to have endured prison attacks, threats, physical and sexual harassment, physical violence, loss of property, "and more" in retaliation for his efforts to bring about changes at SSCF. (*Id.* at 36.)

---

[1] Defendants' previous Motion to Dismiss included prison physician Dr. Mitchell Miller as a moving party. (*See* Doc. 17.) The Amended Complaint, however, does not include Dr. Miller in the caption or allege facts supporting a claim against him. (*See* Doc. 28.) Therefore, Dr. Miller is no longer a party to this lawsuit. (*Compare* Doc. 1 at 2 *with* Doc. 28 at 1.)

The forty-seven-page Amended Complaint references numerous individuals affiliated with SSCF and describes many allegedly unlawful incidents involving Mr. Allen. Regarding Defendants Baker, Deml, and Titus specifically, the Amended Complaint alleges that Mr. Allen has suffered "never[-]ending issues daily for the past two and a half plus years" because of their provision of inadequate medical and dental care to Allen. (*Id.* at 35.) Mr. Allen asserts that all three Defendants were aware of his medical concerns but did nothing to help him; and that Commissioner Deml ordered and allowed policies and procedures at SSCF that violate Mr. Allen's constitutional rights. (*Id.* at 28, 38–39.) Mr. Allen also claims that he wrote to Commissioner Baker about alleged deficiencies in the grievance process (*id.* at 8); that Director Titus rejected one of his grievances (*id.* at 9–10); and that all three Defendants "participated directly and indirectly in the continuous rights violations, pain and suffering, and harm that [Mr. Allen] has . . . endure[d] for more than two []and []a []half years" (*id.* at 11). Finally, Mr. Allen claims that Commissioner Deml ordered a "facility[-]wide shakedown" to train new prison employees, which involved strip-searching and handcuffing detainees and inmates. (*Id.* at 26.)

The Amended Complaint also makes brief reference to the ADA, contending that "insulin-dependent diabetes . . . meets all three prongs of the ADA's disability definition" (*id.* at 17 (internal quotation marks omitted)). Mr. Allen alleges that he "has had several of his rights violated ([c]onstitutional, ADA, and other statutory)" (*id.* at 40). His request for injunctive relief includes "treatment from Clear Choice specialists," the "abrupt[]" end to all harassment and abuse, provision of an "Omni Pod 6 insulin[] pump and compatible [D]excom 6 CGM [continuous glucose monitor]," and "weekly private consultations with the nurse of [Mr. Allen's] choice." (*Id.* at 42.)

3

In an April 14, 2023 Order denying Mr. Allen's request for a preliminary injunction and temporary restraining order, Chief Judge Crawford explained that "much of the relief Mr. Allen seeks is beyond this court's power to grant; the court cannot preemptively control each and every interaction Mr. Allen has at [SSCF] on a day-to-day basis." (Doc. 30 at 8.) As the Court's Order denied Mr. Allen's request for injunctive relief, this Report and Recommendation does not address the requests for injunctive relief in the Amended Complaint.

Defendants request dismissal of Mr. Allen's claims on the following grounds: (1) the Eleventh Amendment bars claims for monetary damages against state officials sued in their official capacities; (2) Defendants in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983; (3) Mr. Allen has not adequately alleged that Defendants were personally involved in the alleged constitutional deprivations, a required element of a § 1983 claim; (4) ADA claims cannot be maintained against government officials sued in their individual capacities; and (5) to the extent that Mr. Allen attempts to assert a negligence claim against Defendants, he must name the State as a party because Vermont law does not permit a cause of action for negligence against individual state employees. (*See* Doc. 29.) Mr. Allen's response to Defendants' Motion to Dismiss was docketed on June 14, 2023. (Doc. 32.)

## Analysis

### I.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This does not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns*, 493 F.3d at 98. The Court is not required to credit the complaint's "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, [which are] supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

Even after *Iqbal* and *Twombly*, the Court must construe a pro se complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading it "to raise the strongest arguments . . . suggest[ed]," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

5

Therefore, in considering *pro se* complaints on a Rule 12(b)(6) motion to dismiss, courts "apply[] a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in the City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

However, even *pro se* litigants "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008); *Triestman*, 470 F.3d at 477 ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)).

## II.   Claims Under 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, a plaintiff may bring a civil claim for damages against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To succeed on a § 1983 claim, a plaintiff must establish that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983

itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  Mr. Allen seeks redress for the alleged deprivation of his rights under the Eighth and Fourteenth Amendments due primarily to the allegedly inadequate medical care at SSCF.  (*See* Doc. 28 at 14–15, 36–39.)  He also appears to assert an ADA claim.  (*Id*. at 17, ¶ 36.)

### A.  Sovereign immunity bars claims for monetary damages against Defendants in their official capacities.

The Eleventh Amendment bars Mr. Allen's claims for monetary damages against Defendants in their official capacities.  "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (second alteration in original) (internal quotation marks omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) ("[A] federal court [may] not entertain a suit brought by a citizen against his own State.").  Therefore, although § 1983 generally provides a federal forum to remedy deprivations of civil liberties, "it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Gollomp*, 568 F.3d at 366 (internal quotation marks omitted).  When a state official is sued for damages in his or her official capacity, the claims are deemed to be brought against the State and therefore barred by

the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Exceptions to this general rule apply when there has been an explicit and "unequivocal[]" waiver of immunity by a state, or a similarly clear abrogation of immunity by Congress. *Pennhurst*, 465 U.S. at 99 ("Our reluctance to infer that a [s]tate's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system."); *see Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015).

The State of Vermont has not waived its Eleventh Amendment sovereign immunity. To the contrary, the Vermont Legislature has reserved the State's immunity under the Eleventh Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979).

The Eleventh Amendment bars Mr. Allen's claims for monetary damages against Defendants in their official capacities. (*See* Doc. 28 at 43.) Therefore, I recommend that these claims be dismissed.[2]

---

[2] Similarly, the Eleventh Amendment bars any monetary damages claims against Vermont DOC because a claim against a state agency is deemed a claim against the State. *See Pennhurst*, 465 U.S. at 100 (finding that agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity). Additionally, a state agency is not a "person" within the meaning of § 1983. *Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Neither a state nor one of its agencies . . . is a 'person' under § 1983." (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998))); *Holley v. Middletown Police Dep't*, Case No. 20-CV-1664, 2021 WL 2413398, at *4 (D. Conn. June 14, 2021) ("The DOC, as an arm of the state, is not a 'person' for purposes of section 1983 and therefore cannot be held liable as a defendant in an action raised under section 1983.").

### B. The individual-capacity claims against Defendants should be dismissed because the Amended Complaint does not adequately allege the personal involvement of Defendants in the claimed constitutional deprivations.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). A defendant may be held accountable only for his own actions under § 1983, *Iqbal*, 556 U.S. at 683, and the plaintiff must show some "tangible connection" between the defendant and the alleged constitutional violation, *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Amended Complaint does not allege specific facts demonstrating the personal involvement of Defendants Baker, Deml, and Titus either in the provision of medical care to Mr. Allen or in any other allegedly wrongful conduct attributed to them. Rather, Mr. Allen essentially alleges that Defendants failed to act on his written grievances and otherwise failed to remedy the alleged wrongs that he experienced at SSCF—medical and otherwise—notwithstanding their knowledge of those wrongs. (*See* Doc. 28 at 9–11, 32, 38.) "It is well settled that ignoring complaints from an inmate fails to establish personal involvement in the alleged constitutional violation." *Renelique v. Duncan*, No. 9:03CV1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007); *see Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.N.Y. 2002) (collecting cases holding that not responding to prisoners' letters of protest and requests for investigation is an insufficient basis for § 1983 liability). Similarly, "a failure to process, investigate[,] or respond to a prisoner's grievances does not in itself give rise to a constitutional claim," as "inmate grievance[] procedures are undertaken voluntarily by the states [and] . . . are not constitutionally required." *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445–46 (W.D.N.Y.

9

2008); *Young v. Choinski*, 15 F. Supp. 3d 172, 189 (D. Conn. 2014) ("[A] supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official." (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997))).

Nevertheless, the documents Mr. Allen attaches to the Amended Complaint include several grievance forms and responses from DOC personnel, including several responses from Commissioner Deml in November and December 2022. (Sealed Doc. 28-4 at 2, 20.) The Court does not reproduce excerpts of the responses because they contain sealed medical information, but notes Commissioner Deml's representation in the responses that relevant records were reviewed and the medical contractor consulted in the process of responding to Mr. Allen's concerns.

Mr. Allen also may not base his individual-capacity claims against Defendants Baker, Deml, and Titus on a theory of supervisor liability, i.e., that Defendants are liable to Mr. Allen by virtue of their respective roles as former DOC Commissioner, current DOC Commissioner, and DOC Director of Health Services. Mr. Allen must allege that Defendants were personally involved in the claimed constitutional violations, as supervisor liability in a § 1983 action cannot rest on a theory of respondeat superior. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *see Tangreti v. Bachmann*, 983 F.3d 609, 617 (2d Cir. 2020) ("[A] conception of supervisory liability—according to which a supervisor may be held liable based on a lesser showing of culpability than the constitutional violation requires—is inconsistent with the principle that officials may not be held accountable for the misdeeds of their agents." (internal quotation marks omitted)). In the Second Circuit, mere "linkage in the prison chain of command" is insufficient to demonstrate that the DOC Commissioner or other supervisory official is liable under § 1983.

*Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (allegation that prison superintendent had general responsibility over inmate "care, custody[,] and safety" was insufficient for § 1983 liability, and explaining: "[d]ismissal of a section 1983 claim is proper where . . . the plaintiff 'does no more than allege that [defendant] was in charge of the prison'" (third alteration in original) (quoting *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974))).

Prior to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit identified "five categories of evidence that [could] establish the liability of a supervisory official for a subordinate's conduct" under § 1983. *Tangreti*, 983 F.3d at 616.[3] The Second Circuit has since clarified the standard that applies to supervisory liability claims in light of *Iqbal*:

> [A]fter *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution. The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly.

*Id*. at 618 (second alteration in original) (citations and internal quotation marks omitted); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

---

[3] These categories consisted of: (1) direct participation in the constitutional violation; (2) failure to remedy the violation after learning of it through a report or appeal; (3) creating or allowing to continue a policy or custom amounting to a constitutional violation; (4) being grossly negligent in supervising subordinates who committed a constitutional violation; or (5) failure to act on information indicating that unconstitutional acts were occurring. *Tangreti*, 983 F.3d at 616.

As Mr. Allen is a pretrial detainee, his claim of inadequate medical care arises under "the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). A pretrial detainee asserting a § 1983 claim based on deliberate indifference to his medical needs must allege that (1) "the deprivation of medical care was sufficiently serious", and (2) that the defendant "acted or failed to act with a sufficiently culpable state of mind." *Lara-Grimaldi v. County of Putnam*, 529 F. Supp. 3d 88, 105 (S.D.N.Y. 2021) (internal quotation marks omitted). With respect to a sufficiently culpable state of mind, a plaintiff must ultimately show that "the defendant-official acted intentionally" in failing to provide adequate medical care "or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id*. (omission in original) (quoting *Darnell*, 849 F.3d at 35). Negligence is insufficient; it must be shown that the defendant "acted intentionally or recklessly." *Darnell*, 849 F.3d at 36.

The Amended Complaint does not contain any specific allegations describing the Defendants' personal involvement in the allegedly inadequate medical care provided to Mr. Allen. For example, Mr. Allen does not allege that he had any personal contact with Defendants Baker, Deml, or Titus regarding his medical situation. He does allege that he informed Defendants of his medical concerns through the grievance process, but he does not plausibly allege that Defendants intentionally determined not to provide adequate care or recklessly did not act with reasonable care despite excessive risk to Mr. Allen's health. Considering the factual allegations and the attached grievance documents, the Court cannot draw the reasonable inference under the relevant legal standards that Defendants are liable for the misconduct alleged.

Moreover, the Amended Complaint does not contain plausible allegations that Defendants created or implemented a particular policy or custom of unconstitutional practices, resulting in the intentional provision of inadequate care to individuals with serious medical conditions,[4] or were otherwise responsible for making any decisions regarding Mr. Allen's diabetic care. The Amended Complaint's conclusory allegations that Defendants must have known about Allen's medical situation are insufficient to impute § 1983 liability to them. *See Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801(SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010). Further, although Mr. Allen claims that "[Defendants] are liable for everything" (Doc. 28 at 39), he does not plausibly allege facts showing that Defendants were deliberately indifferent to his serious medical needs.

Therefore, Mr. Allen's § 1983 claims against Defendants in their individual capacities should be dismissed.

## III.  Other Claims

Read liberally, the Amended Complaint may be asserting a claim under the ADA[5] and a state-law negligence/medical malpractice claim. Title II of the ADA—which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from

---

[4] According to Mr. Allen, "[a] custom can be shown or a policy can be inferred from widespread practices of repeated Constitutional violations for which the offending officers were not discharged or reprimanded." (Doc. 28 at 38, ¶ 64.) He further alleges:

> Since Max Titus and James Baker had originally done nothing to remedy the Plaintiff's circumstances, they are at fault for every single day and incident causing suffering that Mr. Allen has gone through. Nicholas Deml is equally responsible for every incident and day of suffering since he refused to do anything to fix the wrongs. He has ordered and continued and allowed policies, procedures, and actions in his facility that violates [federal] rights . . . leading to a lot of harm to Mr. Allen . . . .

(*Id*. at 38–39, ¶ 67.) However, these conclusory allegations without factual detail are insufficient to plausibly allege Defendants' liability for unconstitutional policies or customs at SSCF.

[5] As noted above, the Amended Complaint makes only passing reference to the ADA. (Doc. 28 at 17.) It similarly only briefly references the ADA in the "cause of action" section. (*Id*. at 40.)

13

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C.A. § 12132—does not provide for individual-capacity claims against state officials for monetary damages. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). To the extent that Mr. Allen is bringing an ADA claim for damages against Defendants in their official capacities, he must plead that the defendant "was motivated by discriminatory animus or ill-will based on the plaintiff's disability." *Keitt v. New York City*, 882 F. Supp. 2d 412, 455 (S.D.N.Y. 2011) (quoting *Garcia*, 280 F.3d at 111). Mr. Allen has not alleged facts plausibly demonstrating that the allegedly inadequate care was motivated by discriminatory animus or ill-will based on his diabetes.

In addition, to the extent that the Amended Complaint may be asserting a state-law negligence/medical malpractice claim, it should be dismissed for lack of subject matter jurisdiction because § 1983 is not a vehicle for negligence claims. *See Owens v. Bellevue Hosp. Ctr.*, 101 F.3d 109, 1996 WL 134227 (Table) (2d Cir. 1996) ("Allegations of medical malpractice or negligent failure to provide treatment will not suffice to support an action under 42 U.S.C. § 1983."); *Engelhardt v. Beth Israel Med. Ctr.*, No. 00 Civ. 2239(AKH), 2000 WL 1871736, at *4 (S.D.N.Y. Dec. 20, 2000) ("Section 1983 claims are not to be used to duplicate state tort law at the federal level." (internal quotation marks omitted)).[6]

Even assuming the court has jurisdiction over an alleged medical malpractice claim in this case, Vermont law does not provide a right of action against state employees for negligence.

---

[6] If the Court agrees with the recommendation that the § 1983 and ADA claims should be dismissed, I further recommend that the Court not exercise supplemental jurisdiction over Allen's possible negligence claim given that the federal claims are properly dismissed. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

12 V.S.A. § 5602; *see Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 6, 184 Vt. 1, 6, 955 A.2d 1082, 1087 (2008) ("[U]nder Vermont law, claims based on the actions of a state employee must generally lie against the state, not the individual employee who allegedly committed the harm."). Mr. Allen has not included the State as a party in his lawsuit. In addition, the Amended Complaint does not represent that Mr. Allen has complied with 12 V.S.A. § 1042(a), which requires a plaintiff bringing a medical malpractice claim to file a "certificate of merit" certifying that he has consulted with a health care provider qualified to serve as an expert witness, and that the provider offered an opinion: (1) describing the applicable standard of care; (2) indicating that there is "a reasonable likelihood that the plaintiff will be able to show that the defendant failed to meet that standard of care;" and (3) indicating that there is "a reasonable likelihood that the plaintiff will be able to show that the defendant's failure to meet the standard of care caused the plaintiff's injury." Failure to file the certificate of merit "shall be grounds for dismissal of the action without prejudice." 12 V.S.A. § 1042(e). There is no indication that Mr. Allen has filed the requisite certificate of merit, and the Amended Complaint contains no allegation that Defendants Baker, Deml, and Titus failed to meet the medical standard of care for diabetics. Thus, to the extent that the Amended Complaint asserts a negligence/medical malpractice claim, it should be dismissed on this basis as well.

### IV.     Leave to Amend

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). An opportunity to amend is not required, however, where the plaintiff has already amended the complaint. *Id.*; *see also Advanced Marine*

*Tech. v. Burnham Sec., Inc.*, 16 F.Supp.2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once).  Leave to amend also is not required where "[t]he problem with [the complaint] is substantive," such that "better pleading will not cure it."  *Cuoco*, 222 F.3d at 112.  Mr. Allen has already supplemented his complaint once and amended his complaint once.  (*See* Docs. 1, 3, 25, 28.)  He has not requested another opportunity to amend.  He also has not stated facts that may cure the Amended Complaint's insufficient pleading as to Defendants Baker, Deml, and Titus.  Therefore, I recommend that leave to amend be denied.

## Conclusion

For these reasons, I recommend that Defendants Baker, Deml, and Titus's Motion to Dismiss (Doc. 29) be GRANTED, and Allen's Amended Complaint (Doc. 28) be DISMISSED with prejudice as to these Defendants.

Dated at Burlington, in the District of Vermont, this 24th day of August 2023.

>  */s/ Kevin J. Doyle*
>  Kevin J. Doyle
>  United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) (quoting Small v. Sec'y of Health & Hum. Servs., 892 F.2d 15, 16 (2d Cir. 1989)).